[No. 685.    September 1, 1896.]

## TERRITORY OF NEW MEXICO, APPELLEE, v. JOHN CHAMBERLAIN, APPELLANT.

CRIMINAL LAW—HOMICIDE—SUDDEN AFFRAY—EVIDENCE—INSTRUCTION.—
On a prosecution for murder, where the evidence was that defendant
fired the fatal shot in a sudden affray between a party to which he
belonged and that of deceased, in which the former were the aggress-
ors, and several shots were exchanged,—Held: That a charge of
murder in the second degree was supported by the evidence.

ID.—REMARKS OF PROSECUTING ATTORNEY TO JURY.—On such trial, a
remark of the prosecuting attorney to the jury: "Gentlemen, you
are all Americans; the defendant is an American; the victim a poor
Mexican sheep herder. But I do not believe that, because the victim
was a Mexican, you will fail to do your duty,"—Held: That this
language was not sufficient to justify a reversal.

APPEAL, from a judgment of conviction for mur-
der in the second degree, from the Fifth Judicial Dis-
trict Court, Lincoln County.    Affirmed.

The facts are stated in the opinion of the court.

A. A. FREEMAN for appellant.

JOHN P. VICTORY, solicitor general, for the terri-
tory.

Where there is even slight evidence that the offense
committed may have been of a lower degree than the
one charged, it is proper for the court to give to the

jury the law of such offense.    State v. Patterson, 34
Pac. Rep. (Kan.) 784; Territory v. Young, 2 N. M.
(Gil.) 93.

Where the instruction of murder in the second
degree is given to the jury, and the proof was sufficient
to convict of murder in the first degree, the instruc-
tion, though erroneous, being more favorable to the
defendant than the evidence would warrant, he can
not complain.    Territory v. Salazar, 3 N. M. (Gil.)
321; State v. Alston, 113 N. E. Rep. 666; S. C., 18 S.
E. Rep. 692; Marshal v. State, 14 S. Rep. 92; State v.
Berkley, 19 S. W. Rep. (Mo.) 192; Jones v. Comm.,
25 Id. (Ky.) 877.

An instruction relative to murder in the second
degree is not objectionable on the ground that it ex-
cludes a verdict of acquittal, where an instruction on
reasonable doubt was also given.    Housh v. State, 61
N. W. Rep. (Neb.) 699; S. C., 43 Neb. 373.

BANTZ, J.—The evidence tended to show that the
defendant and two other American cattlemen rode into
a camp of some Mexican sheep herders, ordering the
latter to take their sheep away from the range, which
they proceeded to do.    The deceased and his brother
Bonifacio went with the burros to a lake near by to
get some kegs filled with water when the defendant
and his two companions rode up.    The firing soon after
began.    Bonifacio testified that one of the Americans
struck him over the back with a rope; and that two of
the Americans fired their rifles without hitting either
the deceased or Bonifacio, that deceased was standing
with his rifle on his arm, and "by the time he went to
move his gun he had been struck and he fell back, and
as he was on his back he fired up in the air;" deceased
was facing the defendant and his two companions
when they fired their rifles, they afterwards fired at the
deceased and the witness with pistols, though witness
was not struck.    A shot was fired which struck the gun

of deceased which caused him to fall down, and while down he attempted to get up when the defendant fired the shot which killed the deceased. The shooting occurred near the railroad running between Magdalena and Socorro and was seen by an engineer on a passing train who testified at the trial. He testified that he was about seventy-five or a hundred yards away, about three miles the other side of Water Canon. I noticed several cowmen and several Mexicans with burros, and it seemed like there was a little trouble."

"Q. What did they (the cowboys) seem to be doing? A. Appeared like they were driving those other parties away, apparently.

"Q. Driving the Mexicans away? A. Yes, seemed that way.

"Q. Go on; state what you saw. A. Appears to me one of the cowmen was lashing his rope or lariat, apparently hitting one of the Mexicans over the back or head, and soon one of the Mexicans bent over apparently for some reason or other; in the meantime one of the white men jerked out his six shooter and fired, or a gun; then I saw the Mexican fall over. I saw smoke from the gun; then the shooting commenced from all directions; the Mexican commenced shooting; he was lying on the ground; the rest of them were shooting from all directions, riding away. That's about all I saw of it; the train went rapidly by." On cross-examination he testified in regard to the first firing.

"Q. At that time did one or two guns fire first? A. Just one at the beginning.

"Q. Then the man shot at fell over? A. He fell down; yes, sir.

"Q. Then he commenced firing and the others commenced firing? A. I would not be certain whether the man that got shot did the firing or whether it was his partner; they were both together."

There were some eight, ten, or a dozen shots fired. Saml. Tingley, another witness, testified that he was working on the range at the time and the evening of the day of the killing the defendant and Crow and Franklin came to him and "they" told him that they had some difficulty with some Mexican sheep herders—that "they were going along and one of the sheep herders kept edging away from the sheep herd, and directly one of them had a difficulty with another sheep herder, and there was some trouble and John Chamberlain told me—I think it was him said that when he was watching this sheep herder and this George Franklin—and as he was watching them this Mexican kept edging away and heard him throw a cartridge into his gun and he looked around and saw this Mexican have a gun leveled on him and he threw down on him and both fired at the same time."

The defendant was convicted of murder in the second degree and sentenced to imprisonment in the penitentiary for sixteen years.  Two errors have been assigned, the first of which is that the court erred in instructing as to murder in the second degree, when under the evidence it was the duty of the jury to acquit unless they found the defendant guilty of murder in the first degree. . The second error claimed is that the district attorney made improper and prejudicial remarks in his closing address to the jury.

1.   The circumstances disclosed in the evidence were sufficient to justify the jury in finding that the killing was the result of a sudden affray arising in hot blood.   The whole transaction must have occupied but a very few moments as shown by the testimony of the engineer of the passing train.   The charge as to murder in the second degree was not therefore without support in the evidence "any theory legitimately aris-

HOMICIDE: sudden affray:
evidence:
instruction.

ing out of the evidence imposes upon the court the duty of submission by appropriately instructing upon the law governing it, and this without regard to the strength or weakness of the supporting facts. Uniform with the previous rulings of this court, is the doctrine here declared, viz.: The charge of the court must make a pertinent application of the law covering every theory arising out of the evidence; that the duty is not dependent upon the court's judgment of the strength or weakness of the testimony supporting the theory, it being the prerogative of the jury to pass upon the probative force of the testimony." Liskosski v. State, 3 S. W. Rep. 698; Territory v. Friday, 8 N. M. 204. "The jury have the right to determine whether or not the state of the prisoner's mind was such as to rob him of the premeditated purpose or design to kill." Territory v. Baker, 4 N. M. (Gil.) 236.

2. In his closing address to the jury the district attorney said: "Gentlemen; you are all Americans; the defendant is an American; the victim a poor Mexican sheep herder, but I do not believe that

REMARKS of prosecuting attorney to jury.

because the victim was a Mexican that you will fail to do your duty." To this language the defendant's counsel excepted, and it is urged that the remark was improper and prejudicial. There is nothing in the language of the district attorney at all calculated to induce the jury to deal unfairly with the defendant in the consideration of his guilt or innocence under the evidence. Had there been any suggestion in these remarks tending to influence the jury to find a verdict against this defendant on account of his birth or nationality, whether Mexican or American, any such suggestion or attempt would deserve and receive the severest reprimand, and we would unhesitatingly reverse the judgment in such a cause. But such is not the case here. There is no

error in the record, and the judgment will therefore be affirmed.

SMITH, C. J., and LAUGHLIN and COLLIER, JJ., concur.